IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE MEDEIROS, SR., Individually and on behalf of the ESTATE of WAYNE MEDEIROS, JR., | ) ) ) ) ) | CV NO 11-00221 DAE-RLP |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| THE CITY AND COUNTY OF HONOLULU, N. AH YAT and DOE DEFENDANTS 1–10, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART DEFENDANT CITY AND COUNTY OF
HONOLULU'S MOTION TO DISMISS FIRST AMENDED COMPLAINT;
(2) GRANTING IN PART DEFENDANT N. AH YAT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT; (3) DENYING AS MOOT PLAINTIFF'S
<u>MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>

On August 5, 2011, the Court heard Defendant City and County of

Honolulu's Motion to Dismiss First Amended Complaint (Doc. # 4), and

Defendant N. Ah Yat's Motion to Dismiss First Amended Complaint (Doc. # 10).

Paul V. K. Smith, Esq., appeared at the hearing on behalf of Plaintiff; Tracy Fukui,

Esq., appeared at the hearing on behalf of Defendants. After reviewing the

Motions and the supporting and opposing memoranda, the Court GRANTS IN

PART Defendant City and County of Honolulu's Motion to Dismiss First Amended Complaint (Doc. # 4), GRANTS IN PART Defendant N. Ah Yat's Motion to Dismiss First Amended Complaint (Doc. # 10), and DENIES AS MOOT Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. # 16).

BACKGROUND

This case arises from an incident which took place on January 1, 2009, whereby Decedent Wayne Medeiros, Jr. ("Decedent") was involved in a police chase with Defendant Officer N. Ah Yat ("Ah Yat"), resulting in Decedent's death. Specifically, on January 1, 2009, Decedent was driving a motorcycle, license plate number 337XJD, south along Kamehameha Highway. (First Amended Complaint, "FAC," Doc. # 1-3 ¶ 12.) At approximately 11:00 pm, Ah Yat, while on duty as a police officer, pulled over Decedent for allegedly speeding in excess of the posted speed limit. (Id. ¶ 13.)

After initially stopping, Decedent "turned away from Defendant N. Ah Yat and attempted to flee from Officer N. Ah Yat's custody on his motorcycle." (Id. ¶ 14.) Ah Yat then proceeded to chase Decedent in his police car, allegedly "too closely and at too high a rate of speed." (Id. ¶ 17.) Decedent then lost control of his motorcycle, crashing and dying near the intersection of Waipahu Street and Paiwa Street. (Id. ¶ 15.) Plaintiff further states that Ah Yat

failed to notify dispatch of the high speed pursuit, and that Decedent was unarmed and posed no significant threat of death or serious physical injury to Ah Yat or the public.  (Id. ¶¶ 18, 20.)

Plaintiff Wayne Medeiros, Sr., ("Plaintiff") is the surviving father of Decedent, and brings this action both in his individual capacity and on behalf of the estate of Decedent.  On November 12, 2010, Plaintiff filed a Complaint against Defendants City and County of Honolulu ("County") and Ah Yat (collectively, "Defendants"), in the Circuit Court of the First Circuit, State of Hawaii, entitled Wayne Medeiros, Sr. v. the City and County of Honolulu, et al., Civil No. 10-1-2434-11 (PWB).  (Doc. # 1-2.)  On December 28, 2010, Plaintiff filed a First Amended Complaint ("FAC"), also in the Circuit Court of the First Circuit, State of Hawaii, in the aforementioned action.  (FAC, Doc. # 1-3.)  Defendants allege that they received a copy of the FAC on March 17, 2011, and thus filed a timely notice of removal on April 5, 2011, removing the instant action from the Circuit Court of the First Circuit, State of Hawaii, to this Court.  (Doc. # 1 at 3.)

Plaintiff's FAC alleges that he, individually and on behalf of the estate of Decedent, suffered injuries and/or damages from the incident which occurred on January 1, 2009.  Specifically, the FAC alleges that Decedent's rights were

violated under 42 U.S.C. § 1983 and the United States Constitution, and other state law causes of action.  (See FAC.)

On April 6, 2011, Defendant County filed a Motion to Dismiss the FAC ("Motion 1").  ("Mot. 1," Doc. # 4.)  On June 20, 2011, Defendant Ah Yat also filed a Motion to Dismiss the FAC ("Motion 2").  ("Mot. 2," Doc. # 10.)  On June 24, 2011, Plaintiff filed a Memorandum in Opposition to Motion 1 ("Opposition").  (Opp'n, Doc. # 13.)  On July 1, 2011, County filed a Reply in support of its Motion.  (Reply, Doc. # 14.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

4

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.   See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal

evidence and may not just provide a speculation of a right to relief.  <u>Id.</u> at 586.

When a complaint fails to adequately state a claim, such deficiency should be

"exposed at the point of minimum expenditure of time and money by the parties

and the court."  <u>Id.</u> at 558 (citation omitted).  If a court dismisses the complaint or

portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v.</u>

<u>Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be

granted "if it appears at all possible that the plaintiff can correct the defect")

(internal quotations and citations omitted).

DISCUSSION

For the reasons set forth below, the Court concludes that Plaintiff's

Section 1983 claim should be dismissed pursuant to Rule 12(b)(6).  Because the

Section 1983 claim conferred subject matter jurisdiction on this Court, the Court

declines to reach Plaintiff's state law claims.

I.    <u>Defendant County's Liability Under 42 U.S.C. § 1983</u>

Plaintiff's FAC sets forth allegations against Defendant County

pursuant to 42 U.S.C. § 1983.  Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper
proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting

Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002))

(quotations omitted).  To state a claim under Section 1983, "'a plaintiff must show

(1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct deprived the plaintiff of a federal

constitutional or statutory right.'"  Jensen v. City of Oxnard, 145 F.3d 1078, 1082

(9th Cir. 1998) (quoting Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989)).

In the instant case, Defendant County contends that Plaintiff failed to

allege sufficient facts to show either municipal liability or a violation of

Decedent's constitutional rights.  (Mot. 1 at 8–18.)  The Court will address these

arguments in turn.

A.    Municipal Liability

A plaintiff may not assert a claim under Section 1983 merely by

identifying conduct properly attributable to the municipality.  Bd. of County

Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  "The plaintiff must also

demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Id.</u>

        1.     <u>Municipal Policy or Custom</u>

"[M]unicipalities may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (quoting <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978)). "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" <u>Id.</u> (quoting <u>Ulrich v. City & County of S.F.</u>, 308 F.3d 968, 984–85 (9th Cir. 2002)).

A plaintiff may therefore establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority"[1] committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992); see Monell, 436 U.S. at 690–91. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Okla. City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167–68 (1970). Allegations of random acts, or single instances of misconduct, are insufficient to establish a municipal custom. See Navarro v. Block, 72 F.3d 712, 714–15 (9th Cir. 1996); Thompson v. City of L.A., 885 F.2d 1439, 1443–44 (9th Cir. 1989).

In the instant case, Plaintiff's FAC states that "[i]n doing the acts alleged in this complaint, Defendant N. Ah Yat was acting under the color of the statutes, ordinances, regulations, customs, and usages of defendant City and

---

[1] "Whether a particular official has final policy-making authority is a question of state law." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

9

County of Honolulu and the State of Hawaii and under the authority of his office as police officer." (FAC ¶ 8 (emphasis added).) Plaintiff fails, however, to provide any facts describing the alleged custom that resulted in the relevant actions, how it was deficient, and how it caused injury to Plaintiff.[2] Indeed, rather than attributing Defendant Ah Yat's conduct to a County policy or practice, Plaintiff does exactly the opposite by stating that Ah Yat "violated the policies and procedures established by the Honolulu Police Department governing pursuit," and that Ah Yat "failed to comply with the pursuit policies and therefore breached the applicable standard of care . . . ." (Id. ¶¶ 17–18.)

Moreover, Plaintiff states that "Defendants are liable for the negligent actions of its agents, employees and servants, including those of Officer N. Ah Yat, under the doctrine of <u>respondeat</u> <u>superior</u>/vicarious liability."[3] (Id. ¶ 10) (emphasis in original). Plaintiff's theory is incorrect, however, as County cannot, under § 1983, be held liable for the actions of certain individuals, employees, or agencies

_____

[2] Plaintiff also fails to allege that an employee with final policymaking authority committed the constitutional tort or ratified the unconstitutional actions of a subordinate such that liability can attach to County.

[3] The Court notes that at the hearing held on the instant motions, Plaintiff's counsel clarified that he did not seek to assert § 1983 liability under a theory of <u>respondeat</u> <u>superior</u>. However, the Court still addresses the argument because the issue remains unclear in the FAC.

under a theory of respondeat superior. Even if Ah Yat, at his own discretion, violated Plaintiff's constitutional rights, County would not be liable for those actions. "The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under [S]ection 1983." Gillette, 979 F.2d at 1347 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (observing that "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability")); see also Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Plaintiff fails to state sufficient allegations regarding municipal liability, and any allegations attributing Ah Yat's conduct to the County are insufficient to survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949. Accordingly, Plaintiff fails to state a claim for municipal liability on the basis of a municipal policy or custom.

2.    Failure to Train

Plaintiff additionally asserts that Defendant County "was responsible for the training of all police officers of defendant city in the proper use of its police vehicles and in the performance of their duties as police officers, including

11

chase/pursuit of suspects." (FAC ¶ 21.) "Defendant [County] had an inadequate training program with respect to police chase(s) of citizens which resulted in the deprivation of the constitutional rights of the decedent and harm to the Plaintiff as the result of the death of his son." (Id.) Defendant argues that Plaintiff fails to allege facts identifying a "deficiency" in the City's training program, particularly one that is "closely related to the ultimate injury." (Mot. 1 at 17.)

Under certain circumstances, failure to train may create municipal liability. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Price, 513 F.3d at 973. Deficient police training creates Section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons" the police have contact with. City of Canton, 489 U.S. at 388. Deliberate indifference may be found where a training program is obviously deficient, and the inadequacy of the program is likely to result in the violation of citizens' constitutional rights. Id. at 390; see also Bd. of County Comm'rs, 520 U.S. at 410 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").[4] Additionally, "the

_____

[4] The Court notes that the recent Ninth Circuit opinion in Starr v. Baca confirmed that "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." - - - F. 3d - - -, 2011 WL 2988827, at * 4 (July 25, 2011). However, supervisor liability is not at issue in the

identified deficiency in a city's training program must be closely related to the ultimate injury." Id. at 391. These high standards of fault and causation are necessary to protect judicial efficiency and to avoid creating "de facto respondeat superior liability on municipalities." Id. at 391–92.

Plaintiff's FAC is completely devoid of any facts to support a claim for failure to train. Instead, Plaintiff's statement that County "had an inadequate training program" is an entirely conclusory allegation, which does not identify a deficiency in the training program that would likely result in the violation of Plaintiff's constitutional rights. Plaintiff also fails to make a contention that Ah Yat's conduct was based on deliberate indifference. Accordingly, Plaintiff fails to state a claim for failure to train under § 1983.

B.    Deprivation of Constitutional Rights

County also argues that Plaintiff fails to allege sufficient facts to show a violation of Decedent's constitutional rights. (Mot. at 8–14.) Plaintiff asserts violations of the Fourth Amendment right to be secure against unreasonable searches and seizures, the Eight Amendment right not to be subjected to cruel or unusual punishment, and the Fourteenth Amendment right to due process and equal protection of the laws, under § 1983. (FAC ¶ 22.)

instant case and thus the holding in Starr does not affect the outcome here.

1.      Fourth Amendment

Plaintiff alleges that Defendants "deprived [D]ecedent of [his] right to be secure in his person against unreasonable searches and seizure as a guaranteed [sic] to [D]ecdent under the Fourth Amendment to the United States Constitution . . . ." (Id. ¶ 22.)  County argues that Plaintiff fails to state a claim under § 1983 for violation of the Fourth Amendment, because no seizure occurred. (Mot. 1 at 9–11.)  Plaintiff argues that Defendant Ah Yat deliberately forced Decedent to crash his motorcycle or deliberately caused Decedent to lose control of his motorcycle, thus constituting a seizure.  (Opp'n at 11.)  Plaintiff further argues that the seizure was unreasonable.  (Id. at 17–18.)

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  The inquiry as to whether Defendants violated Decedent's Fourth Amendment rights proceeds in two steps.  First, the Court must determine whether a "seizure" occurred.  A Fourth Amendment seizure occurs where there is a "governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 596–97 (1989) (emphasis omitted).

Second, if there was such a seizure, the Court must determine whether Defendants'

actions were objectively reasonable.  Scott v. Harris, 550 U.S. 372, 381.

Plaintiff argues that the facts of the instant case, under the standards

laid out in Scott and Brower, constitute a seizure "based on the deliberate

termination of the suspect's movement by the officer."  (Opp'n at 11.)  Brower

discussed whether a seizure occurred where a suspect who had been fleeing police

at high speeds in a stolen car crashed into a police roadblock, causing his death.

489 U.S. at 594.  The Supreme Court reasoned that, where a suspect was "stopped

by the very instrumentality set in motion . . . to achieve that result," a seizure had

occurred.  Id. at 599.  However, such a seizure only occurs where governmental

termination of a person's movement is effected "through means intentionally

applied," such as when a police cruiser side-swipes a fleeing car.  Id. at 597

(emphasis omitted).

In the instant case, the facts alleged by Plaintiff do not clearly indicate

the existence of a "seizure."  Plaintiff asserts that Defendant Ah Yat "followed too

closely and at too high a rate of speed," but there is no indication that either of

those factors contributed to Decedent's crash.  (FAC ¶ 17.)  Indeed, there is no

indication that Ah Yat followed closely and at a high rate of speed for the purpose

of intentionally restraining or "seizing" Decedent.  Further, Plaintiff alleges that

Ah Yat chased Decedent in an effort to run him off the road and/or strike his motorcycle.  (Id. ¶ 16.)  However, Plaintiff does not even allege how the crash occurred.  Rather, construing the facts of the FAC in the light most favorable to Plaintiff, the most the Court can discern from the complaint is that Ah Yat chased Decedent closely and at a high rate of speed.  Even if those factors contributed to Decedent's accident, such a situation is analogous to a police officer accidentally terminating someone's freedom of movement, which the Supreme Court has held to not be a "seizure."  See Brower, 489 U.S. at 569–97.

Moreover, assuming that a "seizure" did occur in the instant case, the FAC provides no factual basis for concluding that a seizure was also unreasonable.  The reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations omitted).  The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  The "reasonableness" inquiry is objective and does not take into account the officer's "underlying intent or motivation."  Id. at 397.

Here, Plaintiff represented that Ah Yat followed Decedent closely and at a high rate of speed with his police car, and that "other less life threatening alternatives were available to the officer which should have been utilized as opposed to and prior to risking/taking the life of [D]ecdent." (FAC ¶ 17.) However, Ah Yat had pulled over Decedent for speeding, and only then did Decedent decide to attempt to flee. Thus, it appears that Ah Yat had a legitimate reason for pursuing Decedent and did not simply do so at random or for the purpose of harming Decedent. Without more, the Court is unable to conclude that Ah Yat's actions were unreasonable. For all of the above stated reasons, the Court determines that Plaintiff has failed to state sufficient facts showing a violation of the Fourth Amendment.

    2.    <u>Eighth Amendment</u>

Plaintiff alleges that Defendants deprived Decedent of his "right not to be subjected to any cruel or unusual punishment as secured to [D]ecedent under the Eighth Amendment to the United States Constitution . . . ." (FAC ¶ 22.) Such a claim is without merit because Decedent was not imprisoned at any time during the relevant incident in this case, thus the protections of the Eighth Amendment do not apply. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) (Eighth Amendment protections specifically concerned with unnecessary and wanton infliction of pain

in penal institutions).  Indeed, the Eighth Amendment's prohibition against cruel

and unusual punishment does not attach "until after conviction and sentence."

Graham, 490 U.S. at 392 n.6 (citations omitted).  Because Plaintiff fails to state

any facts indicating that a conviction, sentence, or incarceration occurred in the

instant action, Plaintiff does not properly plead a constitutional violation under the

Eighth Amendment.

> 3.    Fourteenth Amendment

Plaintiff alleges that Defendants deprived Decedent of his "right not to

be deprived of life, liberty, or property without due process of law, and to be

accorded the equal protection of the laws as guaranteed to [D]ecedent under the

Fourteenth Amendment to the United States Constitution."  (FAC ¶ 22.)

Defendant argues that Plaintiff fails to plead sufficient facts showing that Ah Yat

"intended to cause harm" to Decedent by chasing him, thus Plaintiff's claim fails.

(Mot. 1 at 11–12.)  Plaintiff argues that Defendants are liable under the Fourteenth

Amendment for behavior that shocks the conscience.  (Opp'n at 19.)

Plaintiff's Fourteenth Amendment claim is controlled by County of

Sacramento v. Lewis, 523 U.S. 833 (1998).  Lewis concerns an alleged Fourteenth

Amendment violation arising out of the death of a motorcycle passenger who was

killed after he was hit by a police car during the high-speed pursuit of that

motorcycle.  See Lewis, 523 U.S. at 836–37.  The chase ended when the motorcycle tipped over while attempting a sharp left turn and the passenger of the motorcycle was hit as the police car attempted to brake and skidded into him.  Id. The Supreme Court concluded that "even reckless or deliberate indifference was insufficiently shocking to the conscience to form the basis for a substantive due process claim."  See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (discussing Lewis).  "[I]n such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation."  Lewis, 523 U.S. at 836–37.

The facts alleged here in the FAC do not support the conclusion that Defendant Ah Yat acted in such a manner that was arbitrary and shocking to the conscience.  He did not chase Decedent unprovoked; rather, Decedent attempted to flee after being pulled over for speeding.  Plaintiff has not alleged facts indicating that Ah Yat intended to cause Decedent any harm in chasing him.  For that reason, Plaintiff fails to properly plead a Fourteenth Amendment violation.

In sum, Plaintiff has failed to allege sufficient facts to raise an inference either that County is subject to municipal liability within the meaning of Section 1983 or that County violated Decedent's constitutional rights.

Accordingly, the Court GRANTS County's Motion to Dismiss as to Plaintiff's Section 1983 claim.

II.     Defendant Ah Yat's Liability Under 42 U.S.C. § 1983

Plaintiff argues that Defendant Ah Yat also violated Decedent's Fourth, Eight, and Fourteenth Amendment rights.  (FAC ¶ 22.)  Defendant Ah Yat argues in Motion 2 that Plaintiff has failed to sufficiently state a claim showing that he violated Decedent's constitutional rights.  (Mot. 2 at 7–13.)  As explained above in Section I(B), the Court concludes that Plaintiff has failed to plead sufficient facts indicating that Decedent's Fourth, Eight, or Fourteenth Amendment rights were violated.  Accordingly, the Court also GRANTS Ah Yat's Motion to Dismiss as to Plaintiff's constitutional allegations.

III.    State Law Claims

Plaintiff asserts a number of state law claims against Defendants including the following: state law failure to train; assault; battery; negligence; conditional privilege; and joint and several liability.  County removed Plaintiff's suit to this Court on the basis of federal question jurisdiction, namely Plaintiff's Section 1983 claim.  Because the Court has granted County and Ah Yat's Motions to Dismiss as to Plaintiff's Section 1983 claim, the Court declines to reach Plaintiff's state law claims.

<u>IV.</u>    <u>Request for Leave to Amend</u>

Plaintiff requests leave to amend his complaint in the event the Court dismisses his complaint.  (Opp'n at 34.)  The Court recognizes that it may be possible for Plaintiff to state a claim if provided the opportunity to amend his Complaint.[5]  Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants in this action, with leave to amend no later than 30 days from the filing of this Order.  Additionally, the Court notes that Plaintiff's Motion for Leave to File Second Amended Complaint is currently before U.S. Magistrate Judge Richard L. Puglisi.  (Doc. # 16.)  In light of the Court's decision to allow Plaintiff leave to amend his complaint, the Court DENIES AS MOOT Plaintiff's Motion for Leave to File Second Amended Complaint.  Because the instant Order highlights the deficiencies in Plaintiff's FAC, the Court will allow Plaintiff thirty days to file an entirely new complaint, rather than accept the one submitted in Plaintiff's Motion for Leave to File Second Amended Complaint.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Defendant City and County of Honolulu's Motion to Dismiss First Amended

---

[5] Plaintiff originally filed the Complaint and FAC in Hawaii State Court, which may not have put him on notice that he would be required to meet federal pleading standards.

21

Complaint (Doc. # 4), GRANTS IN PART Defendant N. Ah Yat's Motion to

Dismiss First Amended Complaint (Doc. # 10), and DENIES AS MOOT

Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. # 16).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 12, 2011.



_____
David Alan Ezra
United States District Judge

Medeiros v. City and County of Honolulu et al., Cv. No. 11-00221 DAE-RLP;
ORDER: (1) GRANTING IN PART DEFENDANT CITY AND COUNTY OF
HONOLULU'S MOTION TO DISMISS FIRST AMENDED COMPLAINT;
(2) GRANTING IN PART DEFENDANT N. AH YAT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT; (3) DENYING AS MOOT PLAINTIFF'S
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT